**FIDELITY TRUST CO. et al. v. McCAUGHN, Collector of Internal Revenue.**

(District Court, E. D. Pennsylvania. October 17, 1924.)

No. 10588.

**1. Internal revenue ⟳8—Estate tax; Congress may adopt uniform rule for measurement of estates.**

Congress, in the imposition of a tax on the estates of decedents, is not limited to such property as constitutes the estate of the decedent under the differing laws of the states, but may make a uniform rule by which estates are to be measured throughout the United States.

**2. Internal revenue ⟳8—Estate tax; property passing under "general power of appointment."**

A "general power of appointment," the exercise of which will subject the property passing under it to estate tax, under Act Nov. 23, 1921, § 402(e), being Comp. St. Ann. Supp. 1923, § 6336¾c, must be of such a character that the donee of it has actual and practical dominion of the property as fully to all practical intents and purposes as if it were owned outright.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, General Power.]

**3. Internal revenue ⟳8—Estate tax; power of appointment held limited, and not "general power of appointment."**

A power to dispose of property, which is limited to disposition by will and on condition that the donee "remains unmarried," is not a "general power of appointment," within the meaning of Act Nov. 23, 1921, § 402(e), being Comp. St. Ann. Supp. 1923, § 6336¾c, and though the donee remained unmarried and exercised the power, the property passing thereunder is not subject to estate tax.

At Law. Action by the Fidelity Trust Company and John Sinnott, executors of the will of Mary E. Sinnott, deceased, against Blakely D. McCaughn, Collector of Internal Revenue. Sur rule for judgment. Judgment for plaintiffs.

H. Gordon McCouch, of Philadelphia, Pa., for plaintiffs.

George W. Coles, U. S. Atty., and Francis B. Biddle, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This rule has been taken to raise the question of the lawfulness of a tax exaction, and to that question we go directly. Distinctions are sometimes mere figments of the brain, but they often serve a useful purpose. One is that between a tax levied upon property and a tax measured by that same property. The thought of Congress was to measure the tax in question by the value of the estate of a decedent which passed at his death to others. This was found to work an inequality. What is property and what is a part of the estate of a decedent is determined by the law-making power of the state.

Different states may have different laws. The situation is not unusual in which a person may have two kinds of property. One is that which is emphatically his own, over which he has full dominion because of his ownership; the other exists in the form of a power, which he has the right to exercise over property which does not otherwise belong to him, by which power, however, he may assert in practical effect as full dominion over the property as if it belonged to him outright.

[1] The law of Pennsylvania is that this first species of property would constitute the estate of the decedent; would be subject to his debts, and would pass as his estate under his will, or under the intestate laws, to whomever took in succession, and that this second species of property, or rather the property to which the power related, would form no part of the estate of the decedent; would not be subject to his debts, and would pass, through the exercise of the power, not as his estate, but as the estate of the donor of the power, and not under the will of the donee, nor the intestate laws which governed the succession to his property, but under the will or other instrument which created the power. In other states the law is otherwise, and if the donee of the power enjoys the usufruct, and has the full disposition of the property, he is treated as the owner so far as to subject it to the payment of his debts, and to have it pass in succession as part of his estate. The consequence is, that, if the tax be measured by the "value of the estate of the decedent passing under his will or otherwise upon or in anticipation of his death," the tax levied upon estates of equal value might be much less in Pennsylvania than in other states, and to the many advantages of being a Pennsylvanian would be added one more. The tax paid would thus be varied by the accident of citizenship.

Counsel for plaintiff, being a Pennsylvanian, not only looks upon such a situation with complacency, but with such active approval that he condemns any law which would work a change as "unreasonable, unjust, and confiscatory," and feels assured that there must be some provision of the Constitution somewhere which prohibits the change. Congress, however, looked upon such a situation as anomalous, and sought to work a change by measuring the tax by the value of the property which by the law of Pennsylvania formed the estate of the decedent plus the value of the other property, which under the law of other states would form part of the estate to which

the succession applied. The only effect was to bring about an equality in the tax which was paid out of decedents' estates throughout the United States. Congress, it is true, cannot change the law of property in the states. It is just as true, however, that no state can, by declaring the law of property to be different from what it is in other jurisdictions, force the hand of Congress in respect to how the tax shall be admeasured. The phraseology of Act Cong. Nov. 23, 1921, § 402(e), being Comp. St. Ann. Supp. 1923, § 6336¾c, is that there shall be included in the gross valuation which measures the tax "property passing under a general power of appointment exercised by the decedent."

[2, 3] The first question then is, or the question which may first be considered, whether the power here exercised is "a general power of appointment" within the meaning of the statute. This power is in the first place restricted in its exercise to an exercise by will. This limits the power of disposition by denying to the donee control over what should become of the property during her life time. In the second place, the duration of the time of possession of the power is limited, because it can only be exercised (except with respect to $25,000) during the time the donee "remains unmarried." This means a further restriction in respect to the persons who may be made the beneficiaries of the exercise of the power, for the reason that no husband or children of the donee could be such beneficiaries. It is true the donee retained the power because she complied with the condition upon which her right to exercise it was made dependent. This, however, does not change the character of the power. It was made conditional and remained such. What is a general power, and when it is special, conditional, or is otherwise qualified, is helpful in this discussion; but after all the meaning attached to the phrase by Congress in its use in this act is the meaning of which we are in search.

Without further elaboration, the view we take is that Congress has not directed the property here in question to be included in the valuation which measures the tax to be paid. When a will directs and controls the course of succession to the ownership of property, the testator is in the exercise of a power, whether that power arises out of the right of dominion over what the testator owns, or whether it is in the exercise of what is known to the law as a power conferred upon the testator by another over the property of the donor of the power. If this latter power is of such a character as that the donee of it has actual and practical dominion of the property, as fully to all practical intents and purposes as if it were owned outright, then the property affected is to be reckoned in the fixing of the tax; otherwise, it is not. Often the meaning of a law can be found in what is not expressed more clearly than from the words employed. Whenever there is a power of disposition, succession to property follows, whether the power is exercised or not. Indeed, there is always a second power in the donee of a power of disposition. This second power is the power to exercise or to not exercise the granted power. The succession is as much directed, and directed by the donee of the power, in the one case as in the other. In fact, it is often true that the succession is not changed.

Had Congress intended to include property in every case in which there was a power in the testator, and to reckon this as part of the decedent's estate for tax measurement purposes, it would have been easy to have expressed such intention. Congress did not, but, on the contrary, has said that the act is to apply, not to instances of the existence of any power of appointment, but only when the power is a "general" one and has been exercised. This we have interpreted to mean a power of disposition as broad as that which arises out of ownership.

The rule for judgment is made absolute.